

EOD
02/17/2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DONNA MOORE DIETZ** | § | |
| xx-xxx9696 | § | Case No. 10-60372 |
| | § | |
| Debtor | § | Chapter 7 |

## MEMORANDUM OF DECISION

This matter is before the Court upon hearing of the "Objection to Debtor's Claim of Exemptions" filed by Jason R. Searcy, Chapter 7 Trustee (the "Trustee"), in the above-referenced case. The Objection seeks to invalidate the Debtor's homestead exemption claim as to two non-contiguous tracts of land. A joinder to the Objection was filed by Ana Lilia Flores, Individually and as Legal Representative of the Estate of Juan Manuel Flores Silva and as Next Friend for Emmeline A. Flores and Manuel Flores, Minor Children, Juana Silva Ramírez and Elías Flores Guerrero and Ana Delia Rosas Herrera, Individually and as Legal Representative of the Estate of Wulfrano Ruiz Hinojosa, Alma Delia Ruiz Rosas, Juan Ramon Ruiz Rosas, Refugio Hinojosa Garcia, and Ramon Ruiz Perez, (collectively, the "Tort Plaintiffs") "adopting" the Trustee's Objection.[1] In her response seeking a denial of the Trustee's Objection, the Debtor contends that the Trustee's objection to the homestead designation was untimely and that the two referenced tracts of real property and the improvements thereon qualify for homestead

---

[1] Notwithstanding that joinder and the active participation of the Tort Plaintiffs at the hearing, the challenge to the exemption claim shall be referenced in this opinion as the Trustee's objection.

protection in any event. Upon due consideration of the evidence and the applicable legal authorities, the Court concludes that the Trustee's Objection should be sustained in part and denied in part.[2]

*Factual and Procedural Background*

The Debtor, Donna Moore Dietz (the "Debtor"), filed a petition for relief under Chapter 7 on April 5, 2010. On the filing date, the Debtor filed her Schedule C, as subsequently confirmed through an amended Schedule C filed on May 13, 2010,[3] wherein the Debtor claimed a homestead exemption under Texas law with regard to three (3) tracts of real property. One of the tracts listed on Schedule C is denominated as a house on .75 acre lot in the Royal Oaks Subdivision, more particularly described as 2421 Meadowdale in Flint, Smith County, Texas (the "Flint Property"), upon which the Debtor and her non-debtor spouse reside. The Trustee concedes that the Flint property is the subject of a legitimate homestead claim by the Debtor but maintains, however, his challenge to the legitimacy of the homestead exemption claim as to a 14.929-acre tract located in Noonday, Smith County Texas (the "Noonday Property"), and to the Debtor's one-half undivided interest in a 23.5-acre tract located near Bushy Creek, Anderson County, Texas (the "Anderson County Property").

---

[2] This Court has jurisdiction to consider the objection pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

[3] Plaintiff's Exhibit 2.

None of the properties collectively claimed by the Debtor as her homestead are formally located within a municipality, though the Tort Plaintiffs assert that the Flint Property may be within the extraterritorial jurisdiction of the City of Tyler. No evidence was adduced regarding the existence of any contract to provide municipal services to the properties. The evidence did establish that the Noonday Property is utilized by the Debtors in various ways. It contains storage facilities in which various tractor parts, farm equipment and an old automobile is stored. The Debtor has maintained a vegetable garden there for several years. It has been used for some recreational purposes. Some firewood has been cut there. The tract has produced some income for the Debtors in some years through hay production but the Debtors do not consider hay production to be a source of income nor do they maintain cattle for which the hay would be needed as forage. As for the Anderson County Property, it was a gift to the Debtor from her father that was delivered around 1991. The tract is used for occasional hunting and other recreation. The timber from the tract was sold in 2001[4] and the Debtors anticipate the receipt of additional income from timber cutting activities in the future.

After the filing of the Debtor's voluntary petition for relief under Chapter 7 of the Bankruptcy Code, the initial meeting of creditors conducted under §341 of the Bankruptcy Code was convened on May 14, 2010. At the conclusion of the meeting, which was necessarily brief due to the volume of meetings scheduled for that date, the

---

[4] Debtor's Exhibits G, H and I.

Trustee adjourned the meeting to an unspecified future date.[5]  The adjournment was necessitated by the need for additional testimony and document production from the Debtor at a future date, though it was to be obtained primarily through an examination authorized under Fed. R. Bankr. P. 2004.  Though the Rule 2004 examination was later conducted on June 2, 2010, there is still no specified date to which the §341 meeting has been continued.  Meanwhile, the Trustee filed the present objection to the Debtor's claim of exemptions on July 22, 2010 – 69 days after the adjournment of the original §341 meeting on May 14 and 50 days after the conclusion of the Debtor's Rule 2004 examination.

## Discussion

*Timeliness of Trustee's Objection*

Prior to addressing the Objection itself, the Debtor contends that the Trustee's Objection is untimely.  Federal Rule of Bankruptcy Procedure 4003(b)(1) provides, in relevant part, as follows:

> ...a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under §341(a) is concluded . . .  The court may, for cause, extend the time for filing

---

[5] The Debtor partially relies on the fact that the Trustee erroneously entered a docket notation on June 1, 2010 indicating that the §341 meeting had been held and concluded on May 14.  However, the Trustee's testimony regarding the erroneous nature of that entry is supported by the Trustee's meeting notes, admitted as Exhibit 4, which indicates that the meeting had been "adjourned and not closed." Upon realizing the administrative mistake, the Trustee withdrew that notice on June 8, 2010 [dkt # 26]. In light of the prompt withdrawal of the erroneous notice upon its discovery, it does not bind the Trustee nor otherwise establish that the meeting had been, in fact, concluded on May 14.

>objections if, before the time to object expires, a party in interest files a request for an extension.

FED. R. BANKR. P. 4003(b)(1). The Debtor seeks a declaration from the Court that the meeting should be deemed concluded as of the initial §341 meeting date as a result of the Trustee's failure to continue the meeting to a specific date and time. The Trustee contends that no bright-line rule is appropriate, but that a determination regarding the conclusion of a creditors' meeting and the appropriateness of an adjournment to an unspecified date should be considered on a case-by-case basis.[6]

Although not cited by any party, the Fifth Circuit has spoken on this subject. Following what it characterizes as a majority view, the Fifth Circuit rejected a bright-line test in favor of the case-by-case approach. *Peres v. Sherman (In re Peres)*, 530 F.3d 375 (5th Cir. 2008). "Such an approach affords a trustee discretion yet restrains a trustee's ability to indefinitely postpone a meeting of creditors." *Id*. at 378. *Peres* specifically references four factors to consider in determining whether a trustee's delay in concluding a §341 meeting is unreasonable: (1) the length of the delay; (2) the complexity of the estate; (3) the cooperativeness of the debtor; and (4) the existence of any ambiguity regarding whether the trustee continued or concluded the meeting. *Id*.

In this instance, the evidence demonstrates that the meeting was clearly continued on the record, though to an unspecified date, and that a sufficient justification existed for

---

[6] The Trustee, however, conceded at the hearing that he does not have unbridled discretion in this regard and that, when a continuance is necessary, it would be a "better practice" to continue the meeting to a specific future date. The Court agrees.

the continuance — the need to conduct a Rule 2004 examination of the Debtor to allow a more extensive inquiry than time permitted at the initial §341 setting. Though the case cannot be characterized as particularly complex from an administrative viewpoint, there were detailed investigations that needed to be made by the estate and its creditors in order to evaluate the Debtor's exemption claims and other administrative issues. The Trustee has acknowledged that the Debtor has been cooperative in that process.

The primary factor in this dispute pertains to delay. The fact that no creditors' meeting has been reconvened to this date by the Trustee is irrelevant. The Court is not required to decide at what point, if any, the Trustee's delay in reconvening the §341 meeting in this case passed into the sphere of unreasonableness. Under scrutiny instead is whether the time period that passed between the adjournment of the §341 meeting and 30 days prior to the presentation of the Trustee's objection was unreasonable.[7] Specifically, in order for the Trustee's objection to be untimely, the Court would be required to declare that the Trustee's failure to reconvene the §341 meeting prior to June 22 — less than three weeks' after completion of the Rule 2004 examination — was unreasonable.

The Court concludes that it was not. The creditors' meeting was continued for legitimate reasons and the Rule 2004 examination was conducted on June 2. In a short period of time thereafter, the deposition transcript became available to the Trustee and his review of that testimony was promptly completed. The evidence presented wholly fails to

---

[7] Fed. R. Bankr. P. 4003 provides the Trustee with a 30-day period *after* the particular point in time when the creditors' meeting should have been concluded.

suggest that the Trustee was engaging in gamesmanship or was otherwise seeking to delay the conclusion of the §341 meeting for an improper purpose. The delay for the relevant time period was for legitimate purposes and, therefore, the presentation of the Trustee's objection to the Debtor's exemption claims was timely.

*Validity of Exemption Claims*

The commencement of a bankruptcy case creates an estate encompassing all legal and equitable interests in property of the debtor as of the petition date, including any property that might potentially be exempt. 11 U.S.C. §541(a). The debtor may then exempt certain property from the bankruptcy estate by claiming either the federal exemptions provided by §522(d), or any other exemptions provided by applicable federal, state, or local law. 11 U.S.C. §522(b). In assessing a debtor's claimed exemptions, the court must look to state law to interpret the state exemption rights. *Bradley v. Pacific Southwest Bank (In re Bradley)*, 121 B.R. 306, 312 (Bankr. N.D. Tex. 1990), *rev'd on other grounds*, 960 F.2d 502 (5th Cir. 1992), *cert. denied sub. nom.*, *Commonwealth Land Title Ins. Co. v. Bradley*, 507 U.S. 971 (1993); *see also In re Moody,* 77 B.R. 580, 590 (S.D. Tex. 1987) ["Bankruptcy courts must resort to state law for an interpretation of state exemption rights in homesteads."], *aff'd* by *Matter of Moody*, 862 F.2d 1194 (5th Cir.), *cert. denied*, *Moody v. Smith*, 503 U.S. 960 (1992). The facts and law existing as of the date of the petition govern a debtor's claimed exemptions. *Zibman v. Tow*, 268 F.3d 298, 302 (5th Cir. 2001) ["This focus on the status as of the date of filing is commonly referred

to as the 'snapshot' approach to determining the extent of the bankruptcy estate and the scope of the exemptions."]; *Hrncirik v. Farmers Nat'l Bank (In re Hrncirik),* 138 B.R. 835, 839 (Bankr. N.D. Tex. 1992) [stating that exemptions are determined as of the date of the filing of the bankruptcy petition]. Because the Debtor in this case selected the Texas state law exemptions, the Court must look to Texas law existing on the petition date.

> The Texas Constitution, both now and on the petition date, states in relevant part:
>
> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or contiguous lots amount to not more than 10 acres of land, together with any improvements on the land; . . .[8]

Similarly, TEX. PROP. CODE ANN. §41.002 (Vernon 2000) states as follows:

> (a) If used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business, the homestead of a family or a single, adult person, not otherwise entitled to a homestead shall consist of not more than 10 acres of land which may be in one or more contiguous lots, together with any improvements thereon;
>
> (b) If used for the purposes of a rural home, the homestead shall consist of:

---

[8] *See* 3 TEX. CONST. art. XVI, §51 (West Supp. 2010). Texas courts have always liberally construed any claimed homestead exemption. *Woods v. Alvarado State Bank*, 19 S.W.2d 35 (Tex. 1929) ["The rule that homestead laws are to be liberally construed to effectuate their beneficent purpose is one of general acceptation."] (*citing Trawick v. Harris*, 8 Tex. 312 (Tex. 1852)).

   (1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or

   (2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.

 (c) A homestead is considered to be urban if, at the time the designation is made, the property is:

   (1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and

   (2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality, or under contract to a municipality:

    (A) electric;
    (B) natural gas;
    (C) sewer;
    (D) storm sewer; and
    (E) water.

  The Court now turns to the particular homestead exemption claimed by the Debtor in this case. Although the Trustee has the ultimate burden of persuasion (or the risk of non-persuasion) as the party objecting to the Debtor's claim of exemption, see FED. R. BANKR. P. 4003(c), the Debtor must sustain an initial burden of production or going forward with the evidence to establish that the referenced property qualifies for the exemption claimed before the Trustee, as the objecting party, is obligated to go forward with his proof. This is consistent with Texas law in this area which requires any

-9-

homestead claimant to prove that the property claimed as homestead actually qualifies for the homestead exemption. *See, e.g., Bradley,* 960 F.2d at 507; and *Vaughn v. Vaughn*, 279 S.W.2d 427, 436 (Tex. Civ. App. — Texarkana 1955, writ ref'd n.r.e.) and cases cited therein.

In asserting homestead protection to three non-contiguous tracts totaling more than 39 acres, the Debtor must establish that she qualifies for the rural homestead exemption that can extend to non-contiguous tracts of land, rather than the urban homestead exemption that is limited to ten acres of land "in one or more contiguous lots." TEX. PROP. CODE ANN. §41.002(a). This characterization issue between rural and urban homesteads was simplified by the 1999 amendments to Chapter 41 of the Texas Property Code. As amended, §41.002(c) of the Texas Property Code "is the exclusive vehicle for distinguishing between rural and urban homesteads." *Rush Truck Centers of Texas, L.P. v. Bouchie (In re Bouchie)*, 324 F.3d 780, 785 (5th Cir. 2003). Stated simply, a homestead is urban if it meets the statutory standards set forth in §41.002(c). Otherwise, the homestead is rural. *Rodriguez v. Ramirez (In re Ramirez)*, 2011 WL 30973 at *5 (Bankr. S.D. Tex., Jan. 5, 2011).

Applying the urban homestead standards, prong #1 is satisfied in this instance because, although Flint is not a municipality nor within the city limits of a municipality, it is admitted that the Flint Property is in a platted subdivision — the Royal Oaks subdivision in Smith County.[9] However, the existence of circumstances in prong #2 that

---

[9] Thus, it is unnecessary to determine whether Flint is within the extraterritorial jurisdiction of Tyler pursuant to §42.021(a) of the Texas Local Government Code. In relevant part, that statute provides

could otherwise characterize the Debtor's homestead as urban are missing. While the Flint Property enjoys volunteer fire protection from the Flint Volunteer Fire Department, it is uncontested that no municipality is obligated to provide police protection to the Flint Property.[10] "Under §41.002(c) of the Texas Property Code, a homestead is not urban unless it is served by *both* police and fire protection." *Ramirez*, 2011 WL 30973 at *6 (emphasis in original). The only law enforcement protection that is available to the Flint Property is through the Smith County Sheriff's Office. However, the Court agrees with the extensive analysis and conclusion in *Ramirez* that protection of a county sheriff's department does not constitute "police protection" for the purposes of defining an urban homestead under §41.002(c). Therefore, no analysis of utility services is required. Because the Flint Property is not served by police and fire protection provided by a municipality or under contract to a municipality, the Flint Property is a rural homestead.

---

that:

> "[T]he extraterritorial jurisdiction of a municipality is the unincorporated area that is contiguous to the corporate boundaries of the municipality and that is located:
> . . .
> (4) within 3½ miles of those boundaries, in the case of a municipality with 50,000 to 99,999 inhabitants."

1 TEX. LOC. GOVT. CODE §42.021(a) (West 2008).

[10] However, the Court agrees again with the *Ramirez* analysis that, because the urban homestead is inextricably tied to the availability of municipal services, the phrase "provided by a municipality or under contract to a municipality" modifies not only the relevant utility services but also the police and fire protection components. *Ramirez*, 2011 WL 30973 at *8. Thus, in the absence of a showing that the services rendered by the Flint Volunteer Fire Department is rendered under contract to an existing municipality, there is no evidence that the fire protection component of the §41.002(c) analysis is present.

Since the Debtor is entitled to claim a rural homestead as to the Flint Property, she is facially entitled to assert homestead protection over tracts of real property that are non-contiguous to the Flint Property. However, a rural homestead exemption will not encompass non-contiguous property unless such property is used "for the purposes of a home." *Autry v. Reasor*, 102 Tex. 123, 113 S.W. 748 (1908). Again, the Debtor must sustain an initial burden to establish that the referenced property qualifies for the exemption before any burden of proof shifts to the Trustee.

"[W]here the rural homestead consists of separate tracts of land, the mere establishment of a home on one tract may be insufficient to impress homestead character on the detached properties." *Painewebber Inc. v. Murray* (*In re Murray*), 260 B.R. 815, 830 (E.D. Tex. 2001). As Judge Schell noted in that opinion:

> For years, courts have drawn a distinction between those tracts that are contiguous and noncontiguous with the tract occupied by a residence. With a contiguous tract, one can logically extend the establishment of a home and the activities pertaining to the home to the outer boundaries of that tract. Only an imaginary line separates the residence tract from the contiguous property. Hence, there is a presumption that such a tract is used for the purposes of a home. With a noncontiguous tract, more than an artificial boundary separates it from the home. Unless the noncontiguous tract somehow supports the home, it has no nexus with the residence tract and is nothing more than another piece of property. Thus, a claimant must demonstrate distinct evidence that the noncontiguous piece of property is associated with the residence tract and that it is more than a separate plot of land.

*Id*; *see also*, *Brooks v. Chatham*, 57 Tex. 31, 1882 WL 9451 at *3 (1882) ["The fact that

the head of the family has a parcel of land upon which the family lives, and which thereby becomes entitled to protection as a homestead, cannot attach such character to a detached parcel of land not used for the purposes for which the homestead exemption is given; otherwise the exemption could be extended to something which is not homestead in fact; this was never intended by the constitution."].

The Court finds that the evidence presented by the Debtor is sufficient to sustain her initial burden of production to demonstrate that the Noonday Property has been used "for the purpose of a home" and that such property is therefore included within the scope of the Debtor's rural homestead exemption. There is uncontested testimony that the Debtor and her non-debtor spouse have utilized this property for cultivation of vegetables for their personal use. The property has provided firewood for personal use. The property is used to store items impossible or impractical to retain on the limited, .75-acre tract upon which their homesite sits. These primary uses are generally consistent with the manner in which an appurtenant tract would be utilized near a home. These uses, when combined with the hay production and the various recreational pursuits (which are more accurately classified in the enjoyment/convenience category), and particularly when evaluated under the liberal construction standard applicable to Texas homesteads, are sufficient to place the Noonday Property into the general sphere of assets which the rural homestead exemption was designed to protect. Upon the fulfillment of the Debtor's initial burden as to the homestead character of the Noonday Property, the Court finds that the evidence offered by the Trustee in that regard to contradict the Debtor's *prima facie* case, given his ultimate

burden of persuasion under FED. R. BANKR. P. 4003(c), is not sufficient to sustain his objection to the validity of the rural homestead claim as to the Noonday Property.

That is not the case with the Anderson County Property. Again, a non-contiguous tract of land must be used "for the purposes of a home" in order to qualify for the rural homestead exemption. The Debtor demonstrated only that the tract was used occasionally for recreation and that she and her husband had on a singular occasion received proceeds from the sale of timber from the land, and that she expects additional income from another sale of timber in another decade or so. This Court has noted in previous unpublished homestead decisions that debtors making homestead claims to non-contiguous tracts "are under an evidentiary burden to establish a degree of reliance upon the property far more substantial than that engendered by the mere realization of sporadic income from the property, even if that income, when realized, is spent for family purposes." *See, e.g., In re Comte*, No. 01-60963, slip op. at 10 (Bankr. E.D. Tex. Sept. 20, 2002) and cases cited therein.[11] In the light of what the exemption is designed to accomplish according to the

---

[11] This general proposition has its roots in decisions issued by the Supreme Court of Texas well over a century ago, to-wit:

> It is not intended by our present constitution, any more than was it by those which preceded it, that the use which might be made of lots, though conducing to the advantage of the family and its support--as for farm, fruit, or vegetable products--constitute such lots a part of the homestead; but, in order to constitute them a part of the homestead, the cultivation and use made of the lots which furnish such products as are above suggested, must be in such mode and manner as is consistent with the premises in question being appurtenant to,--a part of the home establishment, even though disconnected therefrom by streets, squares and blocks.

*Keith v. Hyndman*, 57 Tex. 425, 1882 WL 9528 (1882); *Autry*, 113 S.W. at 748 [finding that no homestead claim could be claimed to protect a non-contiguous tract, although homestead claimant

extensive Texas jurisprudence[12] — the protection of the family — the Court concludes that the evidence presented by the Debtor in this case is insufficient to sustain her initial burden of production to demonstrate that her family has used the Anderson County Property "for the purpose of a home." Sporadic recreational use of, and the isolated receipt of income from, a non-contiguous tract of land does not, even collectively, create a sufficient nexus to the Debtor's recognized homestead to impress that detached parcel with the homestead character. Those exiguous contacts do not support an expansion of the Debtor's homestead exemption claim, but instead compel a conclusion that the Anderson County Property must be characterized as a tract of non-exempt property distinctive in purpose and usage from the homestead property. Thus, the Debtor has failed to demonstrate that the Anderson County Property should be properly included within the

---

received crops in kind for tenant's use of the property and such proceeds were utilized for the support of the family]; *Haswell v. Forbes*, 8 Tex. Civ. App. 82, 27 S.W. 566 (Tex. Civ. App. 1894, no writ) [finding that "[w]hen a lot or tract of land is separate from the lot or tract on which the residence of the family is situated, to invest it with homestead character, it is not enough that it be used as 'a means of support and maintenance for the family,' but it must be used in connection with the residence and appurtenant thereto"]; and *Baldeschweiler v. Ship*, 21 Tex. Civ. App. 80, 50 S.W. 644, 645 (Tex. Civ. App. 1899, no writ) [concluding that "[t]he mere fact that means realized from the use of the property, separated from that upon which residence is situated, are used in supporting the family, is not claimed, of itself, to work the exemption in all cases"].

[12] These historical decisions must be now be applied with an emphasis placed upon the substantial changes in the means by which Texas citizens support themselves and their dependents in the modern era. As recognized by the United States Bankruptcy Court for the Western District of Texas:

> The historical context of these older cases must be considered; however, they involve a time and a place where "support" of the rural lifestyle necessarily meant that you provided many of your own essentials such as vegetables, meat, fuel, etc. . . . Care must be taken to determine the applicability of these early decisions to modern day country lifestyles and today's claim of a rural homestead.

*In re Webb*, 263 B.R. 788, 792 (Bankr. W.D. Tex. 2001).

scope of her rural homestead exemption.

Accordingly, the Court concludes that the "Objection to Debtor's Claims of Exemptions" filed by Jason R. Searcy, Chapter 7 Trustee, must be sustained in part and denied in part. The Debtor's claim of a rural homestead exemption as to the 14.929-acre tract located in Noonday, Smith County Texas is sustained and her claim of a rural homestead exemption as to her one-half undivided interest in a 23.5-acre tract located near Bushy Creek, Anderson County, Texas is denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[13] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 02/16/2011

_____
THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[13] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.